# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:10-CV-00185-R

HAM BROADCASTING COMPANY, INC.                                    PLAINTIFF

v.

CUMULUS MEDIA, INC., et al.                                       DEFENDANTS

## MEMORANDUM OPINION

This matter first came before the Court upon Defendants' Motion to Dismiss Plaintiff's original complaint (DN 6). During the pendency of that motion, Plaintiff filed an amended complaint (DN 9), whereupon Defendants filed their Motion to Dismiss the amended complaint (DN 14). Plaintiff has responded to this latter motion (DN 17) and Defendants have replied (DN 20). This motion is now ripe for adjudication. For the reasons that follow, Defendants' Motion is GRANTED.

## BACKGROUND

This action in diversity arises out of a contractual agreement between media companies that own and operate radio stations in the western parts of Kentucky and Tennessee. Plaintiff Ham Broadcasting Company, Inc. ("Ham") owns and operates WKDZ-FM ("WKDZ"), a station located in Trigg County, Kentucky. WKDZ currently broadcasts into Christian County and the surrounding area. Defendants Cumulus Media, Inc., Cumulus Broadcasting, LLC ("CB"), and Cumulus Licensing, LLC, are all wholly owns subsidiaries of Defendant DBBC, LLC ("DBBC"). In 1993, Ham filed a petition with the FCC for permission to change WKDZ's location from Cadiz, Kentucky, to Oak Grove in Christian County, Kentucky. The move was fostered by Ham's desire to increase its broadcast area and to include parts of Tennessee. By

1999, the FCC petition had been approved, but Ham had not yet implemented the changes to WKDZ. It was then that representatives of CB approached Ham and indicated that it wanted to upgrade a radio station that it owned in Nashville, Tennessee, to include the areas now covered by Ham's approved petition ("Nashville Upgrade"). On February 25, 2000, Ham and DBBC executed an agreement ("Agreement") whereby Ham would withdraw its FCC petition, thereby allowing DBBC to submit a similar petition to the FCC for the Nashville Upgrade to broadcast into the area of Tennessee previously covered by WKDZ. In exchange, DBBC made an initial payment to Ham of $250,000.00.

The Agreement also contemplated that as a result of the Nashville Upgrade, the FCC would ultimately require Ham to relocate its radio transmitter site, then located in Cadiz. If this came to pass, the Agreement provided for a second payment of $250,000.00 to Ham on the occurrence of two conditions: the FCC's ruling on the Nashville Upgrade "require[d] WKDZ to change site at Cadiz" and the FCC decision on the upgrade became "final." DN 6-2 at 3. According to the Agreement, this second payment was to cover the general expenses needed to move the transmitter.

A dispute over this second payment has given rise to the instant action. Ham alleges in its Complaint that the two conditions necessary to trigger the second payment have occurred, and as DBBC refuses to tender payment, it is in breach of contract.[1] Alternatively, Ham claims that the parties modified the Agreement through a letter sent to Ham from DBBC's counsel. Under this newly modified Agreement, Ham states it is entitled to the second payment. Finally, Ham

---

[1] Implicit in Ham's filings is that the transmitter in Cadiz has been moved, although the circumstances surrounding its relocation are sparsely described in the record before the Court.

brings a claim of unjust enrichment, stating that DBBC's expansion into Northern Tennessee has denied Ham the opportunity for future improvements that would allow it to broadcast into this area. Ham charges that because of the advantage of a larger broadcast area, DBBC is liable for a sum that reflects the unjust enrichment it has realized as a result of Ham's abandonment of its FCC petition. DBBC denies the majority of the allegations in Ham's Complaint and now moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(6), based on the "clear language" of the Agreement.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

3

of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

## DISCUSSION

### I. Under the Agreement's unambiguous language, the conditions under which Ham should receive the second payment have not been met.

While the first payment, about which there is no dispute, is addressed in Section 4(a) of the Agreement, the disputed portions are contained in Section 1 and Section 4(b). Section 4(b) sets forth the second payment with the following language:

> Further, if the FCC grants the Rule Making Proposal by final order, DBBC shall pay Ham the additional fixed amount of [$250,000.00] which shall be delivered no later than five (5) business days after the later of (i) the date that the FCC's grant of the Rule Making Order becomes a final order (or finality is waived at DBBC's sole discretion) or (ii) the date that DBBC receives an FCC-stamped received copy of the WKDZ license Application as filed with the FCC in accordance . . . . The payments by DBBC to Ham are to cover the expected costs of the WKDZ Change, including engineering and legal fees, necessary equipment purchases and promotional costs.

DN 6-2 at 5. Under the agreement, "WKDZ Change" is defined as "change of [WKDZ's] transmitter site with the station remaining licensed in Cadiz." DN 6-2 at 3. The second payment is explicitly prefaced by the rather lengthy language of Section 1. Its relevant language is as follows:

> DBBC intends to prepare, as appropriate, a rule making proposal or counterproposal for changes in the FM Table of Allotments specifying the Nashville Upgrade and the WKDZ change, as well as changes to other stations (the "Rule Making Proposal"), for submission to the [FCC]. DBBC in its sole discretion will decide when and if to filed the [petition with FCC for the DBBC upgrade]. . . . Except as expressly provided in Section 4(a) below, DBBC's further obligations hereunder are conditioned upon (i) **the grant by the FCC of the Rule Making Proposal that enables the filing of a construction permit to effectuate the Nashville Upgrade, that *requires* WKDZ to change site at Cadiz** and that is not subject to the conditions or changes unless such conditions or changes are accepted by DBBC at its sole discretion ( the "Rule Making Order"), and (ii) the Rule Making Order's

4

becoming final (that is no longer subject to further administrative or judicial review under applicable law), unless waived by DBBC at its sole discretion.

DN 6-2 at 3 (emphasis added).

In large part, the dispute hinges upon the word "requires" contained in Section 1. DBBC argues that the second payment is founded on the granting of the "Rule Making Proposal," which is itself predicated on the occurrence of two events: (1) the Nashville Upgrade and (2) the WKDZ Change. DN 6-1 at 4. Each of these events is defined in the Agreement. In sum, DBBC states that the second payment is only appropriate where the FCC's ruling regarding the Nashville Upgrade specifically *required* WKDZ to change its transmitter site in Cadiz, Kentucky. The FCC ruling, attached to this motion, makes no mention of Ham, WKDZ, or orders any action to be taken by Ham with regards to moving the location of their transmitter. As such, DBBC claims that a "Rule Making Proposal" as set forth under the agreement has not been granted, and since Section 4(b) unambiguously references a "Rule Making Proposal" as the condition upon which the second payment must be made, any additional payment is unnecessary.

Ham offers a number of arguments to undermine DBBC's seemingly straightforward interpretation of the Agreement.[2] It first declares that the word "require," as it pertains to the agreement, should be defined as "to have need of." DN 17 at 4. With this definition, Ham concludes that "if [DBBC] could not have upgraded their Nashville station without Ham giving up the [Tennessee] market and changing its site to Cadiz, then the upgrade needed Ham to change its site at Cadiz and Ham is entitled to its payment." *Id*. Ham also focuses on apparent

---

[2] Several of Ham's arguments concern trivial discrepancies in the diction between unrelated sections of the Agreement. The Court finds these arguments frivolous and therefore does not address them.

discrepancies in Sections 2 and 3 of the Contract that allegedly serve to obviate the requirements laid out in Section 1 of the Agreement. *Id*. at 6.

In interpreting a contractual agreement, a court's primary duty is the "effectuate the intentions of the parties." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002) (citations omitted). "Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *Id*. at 385. (citing *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986)). If a contract is ambiguous or fails to address a material item, parol evidence interpreting certain its language and conditions may be appropriate. *Id*. (citations omitted). However, where the terms of an agreement are clear on their face, "the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Id*. (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)). Ambiguity only exists where reasonable people would find terms "susceptible to different or inconsistent interpretations." *Id*. (citing *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. Ct. App. 1994)). Finally, "the construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000) (citing *Hibbitts v. Cumberland Valley Nat'l Bank & Trust Co.*, 977 S.W.2d 252, 254 (Ky. Ct. App. 1998)).

Ham's reading of the Agreement is incorrect and not supported by its clear language. Section 1 of the Agreement sets out two clear conditions in the definition of "Rule Making Proposal": (1) the FCC granting the Rule Making Proposal that requires WKDZ to change site at Cadiz and (2) that the granting of the Rule Making Proposal effectuates the Nashville Upgrade.

While Ham offers alternative definitions for "requires" to further its own arguments, the Agreement clearly uses the word's more common definition, "to make a request or demand of a person." Oxford English Dictionary Online, www.dictionary.oed.com (last visited March 3, 2011) (defining "require"). Using this definition, the FCC ruling did not "require" or "demand" or "request" that WKDZ change its transmitter location in Cadiz. Ham's reading of the word "requires" is both strained and unnecessary; as the Court finds the term unambiguous, Ham's definition may be rejected. Even a cursory review of the FCC's ruling shows that the Agreement's conditions have not been met, as WKDZ was under no obligation to move its transmitter site. Therefore, the Rule Making Proposal as envisioned by the express terms of the Agreement has not occurred, and consequently DBBC has fulfilled its obligations under the relevant sections.

Moreover, a closer reading of Section 4(b) supports this interpretation rather than the one offered by Ham. The final sentence of this section sets forth that the purpose of the secondary payment was to "cover the expected costs of the [changes to WKDZ], including engineering and legal fees, necessary equipment purchases and promotional costs." DN 6-2 at 5. These are the costs that Ham could have been expected to incur had the FCC forced it to move the transmitter in Cadiz and the Agreement's language demonstrates that the parties contemplated the second payment to ease Ham's burden under those circumstances. However, since the FCC did not "require" the move, Ham is not entitled to the second payment under the Agreement.

Accordingly, Ham is not due the second payment under Section 4(b) of the Agreement.

**II. The letter of April 18, 2001, did not modify the contract.**

Ham next declares that a letter it received on April 18, 2001, from Mark N. Lipp ("the

letter"), is evidence that the Agreement was modified to accommodate Defendants and its move of the transmitter in Cadiz. It continues that the modified Agreement provided for Ham to move its transmitter site "separately from the FCC order upgrading DBBC's radio station." DN 17 at 7.

The letter, written on stationary from the law firm Shook, Hardy, & Bacon L.L.P., is brief, addresses the Agreement, and appears to come from DBBC's legal counsel. The relevant language of the letter is as follows:

> There have been several recent conversation and much correspondence regarding possible changes to the compensation paid to [Ham] under the [Agreement]. *I wish to have the terms of the agreement reaffirmed so that there will be no misunderstanding*.
>
> DBBC acknowledges that at least one of the conditions set forth in Section 4(a) of the agreement has been met, and accordingly DBBC is currently obligated and prepared to pay [Ham] $250,000.00 as set forth therein.
>
> Under Section 4(b) of the agreement, if DBBC's rule making proceeding to upgrade one of DBBC's Nashville stations is filed and prosecuted to a successful conclusion, DBBC will be obligated to pay [Ham] an additional $250,000.00.
>
> Aside from these obligations and the continuing obligation to reimburse [Ham] for its reasonable documented expenses incurred in cooperating with DBBC under the agreement, DBBC has not agreed to any other payment or any other amount.

DN 15 at 2 (emphasis added). In particular, Ham points to the phrase in the letter's third paragraph that states all is necessary under Section 4(b) is that the FCC is rule making proceeding be "filed and prosecuted to a successful conclusion." *Id*. Ham argues that this language demonstrates that Defendants were unconcerned with the previously-described requirements of the Agreement set forth in Section 1.

After reviewing the letter and the Agreement, Ham contentions that DBBC may have modified the contract are devoid of both legal and factual merit. First the letter explicitly states

8

that its author only wants to "reaffirm [the conditions of the Agreement] so that there will be no misunderstanding." *Id*. Indeed, this is the second sentence of the letter. *Id*. That the drafter of the letter failed to mention all the conditions necessary to command performance under Section 4(b) is inapposite; the purpose of the letter is unambiguous: "to reaffirm" the terms of the Agreement. DN 15 at 2. No reasonable person could believe that the intended purpose of the letter was to modify the Agreement.

Not only is the letter clear on its face, but there is also express language in the Agreement that bars this type of modification. Section 8 of the Agreement states that "[t]his Agreement sets forth the entire understanding of the parties hereto at the time of execution and delivery hereof with respect to the subject matter hereof and may not be amended except by written agreement signed by both parties." DN 6-2 at 5. Kentucky law has found that where a contract "forbids" a particular type of modification, the reviewing court should seek to "enforce the contract as written." *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966). Since the Agreement expressly requires a writing signed by both parties for an effective modification, the Court should heed its unambiguous terms and cast aside Ham's modification arguments.

Overall, the straightforward implications of the letter and the Agreement are that the parties did not modify the Agreement as originally written. Thus, this argument by Ham is defective.

### **III. Ham's claim of unjust enrichment is fatally defective.**

Finally, count two of Ham's Complaint pleads an unjust enrichment claim. In *Western KY Coca-Cola Bottling Co. v. Red Bull North America*, this Court described the requirements for unjust enrichment under Kentucky law:

9

> [T]o prevail under a theory of unjust enrichment, [a party] must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value. In other words, unjust enrichment is applicable as a basis of restitution to prevent one person from keeping money or benefits belonging to another.

No. 1:08-cv-00056, 2010 WL 65029, at *7 (W.D. Ky. Jan. 5, 2010) (internal citations and quotation marks omitted). Kentucky law is also explicit that "the doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Codell Construction Co. v. Kentucky*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977). Courts interpreting Kentucky law have repeatedly followed the *Codell* precedent and held that where a claim for unjust enrichment tracks an underlying breach of contract claim, such an action is fatally defective. *See e.g.*, *KY Coca-Cola Bottling Co.*, 2010 WL 65029, at *7; *Francis v. Nami Resources Co.*, No. 04-510, 2008 WL 852047, at *15-16 (E.D. Ky. Mar. 28, 2008); *Res-Care, Inc. v. Omega Healthcare Investors, Inc.*, 187 F. Supp. 2d 714, 719 (W.D. Ky. 2001).

After carefully reviewing count two, the Court finds it must fail because the claim for unjust enrichment is unmistakably based upon the Agreement. As the basis for this unjust enrichment theory, Ham avers that DBBC "would not have been able to upgrade [the Nashville Station] and to enjoy the benefit of the larger broadcast area had Ham not withdrawn its FCC request and agreed to move its community licence to Cadiz, Kentucky." DN 9 at 5. The Complaint also charges that "[t]he relocation and upgrade of [the Nashville Station] has worked to Ham's detriment, in that it blocks potential future upgrades of Ham's radio stations into the desirable broadcast area." *Id*. The actions Ham describes here, foregoing the benefit of its FCC petition and losing the broadcast area in northern Tennessee, are clearly contemplated by the Agreement. Indeed, Ham was paid the initial sum of $250,000.00 because it withdrew its

petition with the FCC, which in turn allowed DBBC to file its own petition covering the same geographic area. Ham states that it seeks to recover the revenue DBBC has realized "as a result of Ham's performance." DN 9 at 6. However, the document that compelled any performance was in fact the Agreement.

In setting forth these facts,[3] the Court is incapable of divorcing the current claim of unjust enrichment from the subject matter of the Agreement. All that has transpired in this action is the sum result of the contract between the parties; that Ham believes it was not fully compensated for the FCC petition it surrendered or that DBBC has enjoyed more success from the terms of the Agreement than previously anticipated is not a basis of a claim of unjust enrichment. As Ham's claim for unjust enrichment is actually a contract claim in disguise, it must fail.

## CONCLUSION

FOR THE FOREGOING REASONS, Defendant's Motion to Dismiss (DN 14) is GRANTED. An appropriate order shall issue.

---

[3] All of these facts are directly on the face of the Agreement and Ham's Amended Complaint.