UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:10-CV-00185

HAM BROADCASTING COMPANY, INC.                                            Plaintiff

v.

CUMULUS MEDIA, INC., *et al.*                                             Defendants

**MEMORANDUM OPINION**

This matter is before the Court upon Defendants Cumulus Media, Inc.; Cumulus Broadcasting, LLC; Cumulus Licensing, LLC; and DBBC, LLC's Motion for Summary Judgment. (Docket No. 38.) Plaintiff Ham Broadcasting Company, Inc., has responded, (Docket No. 42), and Defendants have replied, (Docket No. 45). This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment will be GRANTED.

BACKGROUND

Much of the facts underlying this matter do not appear disputed and are presented more thoroughly in the Court's earlier Memorandum Opinion addressing Defendants' Motion to Dismiss. (*See* Docket No. 21, at 1-4.) Still, the Court will recite briefly the facts relevant to Defendants' instant Motion.

This diversity action arises out of a contractual agreement between media companies that own and operate radio stations in Western Kentucky and Tennessee. Plaintiff Ham Broadcasting Company, Inc. (Ham), owns and operates WKDZ-FM, a radio station located in Trigg County, Kentucky. Defendants Cumulus Media, Inc.;

Cumulus Broadcasting, LLC; and Cumulus Licensing, LLC, are all wholly owned subsidiaries of Defendant DBBC, LLC (DBBC) (collectively "Defendants").

Ham and DBBC entered into an agreement (the "Agreement") in February 2000 whereby Ham would give up its right to move its transmitter from Cadiz, Kentucky, to Oak Ridge Grove, Kentucky, in exchange for payment from DBBC. (*See* Docket Nos. 38-5; 42-1). The Agreement's provisions contemplated two payments, each for $250,000. (*See* Docket No. 38-5, at 3-4.) The first $250,000 payment was paid to Ham in accordance with the Agreement's terms and is not at issue; rather, this dispute centers primarily on the second $250,000 payment, which was expressly conditioned upon (1) the FCC's ruling on DBBC's proposal to upgrade its Nashville station "require[d] WKDZ to change site at Cadiz," and (2) the FCC's decision becoming final. (Docket No. 38-5, at 2-4.)

Ham brought this action alleging that both conditions for the second payment were met and that DBBC was in breach of contract for refusing to tender that payment. Alternatively, Ham argued that an April 18, 2001, letter (the "April Letter") issued to it from attorney Mark Lipp (allegedly acting as DBBC's agent) modified the Agreement and that under that modification Ham is entitled to the second payment. The April Letter's substantive language has been recited previously by the Court, (*see* Docket Nos. 21, at 8; 28, at 6-7), and is no doubt well known to the parties:

> There have been several recent conversations and much correspondence regarding possible changes to the compensation paid to Ham Broadcasting Co. under the above-referenced agreement. I wish to have the terms of the agreement reaffirmed so that there will be no misunderstanding.

> DBBC acknowledges that at least one of the conditions set forth in Section 4(a) of the agreement has been met, and accordingly DBBC is currently obligated and prepared to pay Ham Broadcasting Co. $250,000.00 as set forth therein.
>
> Under Section 4(b) of the agreement, if DBBC's rule making proceeding to upgrade one of DBBC's Nashville stations is filed and prosecuted to a successful conclusion, DBBC will be obligated to pay Ham Broadcasting Co. an additional $250,000.00.
>
> Aside from these obligations and the continuing obligation to reimburse Ham Broadcasting Co. for its reasonable and documented expenses incurred in cooperating with DBBC under the agreement, DBBC has not agreed to any other payment or any other amount.
>
> Please indicate your agreement with the foregoing by signing one copy of this letter in the space below and returning it to me. DBBC will release the check for the Section 4(a) amount when we have your agreement.

(Docket No. 38-4, at 2-3.)

In its Memorandum Opinion entered on May 13, 2011, the Court granted Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 21.) In doing so, the Court concluded the terms of the Agreement required the FCC's order to directly address the location of Ham's transmitter to trigger the second payment and, finding the FCC's order devoid of such language, concluded that recovery under the Agreement's terms was impossible as a matter of law. (*See* Docket No. 21, at 4-7; *see also* Docket No. 28, at 2.) At that time, the Court also dismissed Ham's argument that the April Letter modified the Agreement, noting that the letter explicitly stated its purpose was to "reaffirm" the Agreement's terms. (*See* Docket No. 21, at 7-9.) Ham subsequently petitioned the Court to reconsider that ruling. On reconsideration, the

Court affirmed its prior decision that Ham could not recover under the terms of the Agreement; however, the Court found its decision to dismiss Ham's contract-modification argument premature and concluded that, in construing the allegations in Ham's favor, Ham had stated a plausible claim for relief sufficient to overcome a Rule 12(b)(6) dismissal. (*See* Docket No. 28, at 8.) Discovery now complete, Defendants move the Court for summary judgment, arguing that Ham's claim fails as a matter of law because the April Letter does not amount to an enforceable modification of the Agreement's terms.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys.*

*Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Finally, while the substantive law of Kentucky is applicable here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).

## DISCUSSION

Defendants argue that the April Letter was not an enforceable modification of the Agreement for three reasons: (1) the April Letter was accompanied by no new consideration; (2) there is no evidence of mutual assent, given that neither Ham nor Defendants understood the April Letter to affect the parties' obligations under the Agreement; and (3) the April Letter was not executed by DBBC as required by the express terms of the Agreement. (*See* Docket No. 38-2, at 8-12.) Ham devotes the bulk

of its response to challenging whether attorney Lipp was acting as DBBC's agent when he issued the April Letter, while meagerly addressing the issues of consideration and mutual assent and whether the April Letter constitutes an enforceable modification. (*See* Docket No. 42, at 7-13.)  Now that discovery has been completed, the Court returns to its original decision that Ham's contract-modification argument is devoid of both factual and legal merit.  Because the Court finds the lack of consideration issue dispositive, it need not address whether there was mutual assent or whether attorney Lipp had authority to bind DBBC as its agent.

Kentucky law permits parties to modify a written contract by subsequent oral or written instruments.  *W.H. Simmons & Co. v. Price's Adm'r*, 28 S.W.2d 6 (Ky. 1931). An enforceable modification requires the essential elements of a contract, one of which being consideration.  17A Am. Jur. 2d *Contracts* § 507; *see Cassinelli v. Stacy*, 38 S.W.2d 980, 983 (Ky. 1931).  "[A] material alteration in terms of an existing agreement cannot be enforced unless a consideration for the change enures to the party whom the new agreement is being enforced against."  *Martin v. Pack's Inc.*, 358 S.W.3d 481, 484 (Ky. Ct. App. 2011) (citing *Pool v. First Nat'l Bank of Princeton*, 155 S.W.2d 4, 6 (1941)).  Kentucky courts have defined "consideration" as "a benefit conferred to a promisor or a detriment incurred by a promisee."  *Id.* (citing *Huff Contracting v. Sark*, 12 S.W.3d 704, 707 (Ky. Ct. App. 2000)); *see also Van Winkle v. King*, 141 S.W. 46, 49 (Ky. 1911).  "'Benefit,' as thus employed, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. . . . '[D]etriment' means that the promisee has, in return for the promise, forborne some legal right which he othersise would have been entitled to exercise."

*Huff Contracting*, 12 S.W.3d at 707 (quoting *Phillips v. Phillips*, 171 S.W.2d 458, 464 (Ky. 1943)).

The April Letter does not constitute an enforceable modification of the Agreement because no benefit was conferred on DBBC, as promisor, and no detriment was incurred by Ham, as promisee—thus, the April Letter fails as an effective modification for lack of consideration. This conclusion is buttressed in no small part by the deposition testimony of D.J. Everett, Ham's President and CEO. To begin, Everett testified that Ham's obligations under the Agreement did not change as a result of the April Letter:

> Q. Okay. So you didn't think after you got the April 18th letter that your obligations had changed in any way from the original contract signed in February of 2000?
>
> A. That's correct.
>
> . . . .
>
> Q. So you still had -- after this April 18th letter you felt you still had the same obligations as you did prior to the April 18th letter?
>
> A. Yes.
>
> . . . .
>
> Q. You never intended for your obligations to change in any way?
>
> A. That's correct.

(Docket No. 38-7, at 9, 13.) Everett also testified that he did not interpret the April Letter as changing DBBC's obligations under the Agreement either:

> Q. Do you think the agreement changed any of DBBC's obligations under the agreement, original agreement?

> . . .
>
> A. It -- it does not appear to me that it changed any of DBBC's obligations.

(Docket No. 38-7, at 14.) Everett further testified that, via the April Letter, neither Ham agreed to do anything else for DBBC, nor DBBC to do anything else for Ham:

> Q. Okay. You hadn't agreed to do anything else for DBBC?
>
> A. Correct.
>
> Q. Okay. And DBBC had not agreed to do anything else more for you?
>
> A. Correct.

(Docket No. 38-7, at 9-10.) And finally, Everett's testimony indicates that Ham conferred no benefit on DBBC:

> Q. Did you feel like you provided anything to DBBC in order to get the April 18th letter?
>
> A. What do you mean by, provided anything to him?
>
> Q. Anything? I mean, did you -- you didn't pay them any money to get the April 18th letter, right?
>
> A. No.
>
> Q. You didn't agree to do anything more for them to get the April 18th letter, right?
>
> A. Correct.

(Docket No. 38-7, at 10.)

Ham attempts to argue that consideration is present because, by agreeing to the terms of the letter, Ham waived the right to timely payment of the first $250,000 and thus incurred a legal detriment. (Docket No. 42, at 12-13.) This argument is unconvincing for several reasons. First, Ham bases this argument on the last sentence

Page 8 of 10

of the April Letter—which states, "DBBC will release the check for the Section 4(a) amount when we have your agreement"—to argue that DBBC "expressly conditioned [the first $250,000 payment] on Ham agreeing to the terms of the letter." (Docket No. 42, at 12.) But this sentence can neither be read in isolation nor excised from the remainder of the April Letter's language, which reads, in the second and third sentences: "I wish to have the terms of the agreement reaffirmed so that there will be no misunderstanding. DBBC acknowledges that at least one of the conditions set forth in Section 4(a) of the agreement has been met, and accordingly DBBC is currently obligated and prepared to pay Ham Broadcasting Co. $250,000.00 as set forth therein." (Docket No. 38-4, at 2-3.) These statements unequivocally acknowledge DBBC's obligation to tender the first $250,000 payment in accordance with the terms of the Agreement and its intention to do just that.

Furthermore, Everett's own testimony undercuts Ham's arguments that DBBC tendered the first payment under a modification to the Agreement and that Ham incurred a detriment by signing and returning the April Letter:

> Q. Okay. So they sent you this letter, then you got the $250,000 <u>pursuant to the original agreement</u>?
> A. That's correct.
> Q. You never intended for your obligations to change in any way?
> A. That's correct.

(Docket No. 38-7, at 13 (emphasis added).)

Page 9 of 10

Moreover, the clear language of the April Letter belies any inference that its purpose was to modify the terms of the Agreement. As the Court initially found in its Memorandum Opinion addressing Defendants' motion to dismiss:

> First, the letter explicitly states that its author only wants to "reaffirm [the conditions of the Agreement] so that there will be no misunderstanding." Indeed, this is the second sentence of the letter. That the drafter of the letter failed to mention all the conditions necessary to command performance under Section 4(b) [of the Agreement] is inapposite; the purpose of the letter is unambiguous: "to reaffirm" the terms of the Agreement. No reasonable person could believe that the intended purpose of the letter was to modify the Agreement.

(Docket No. 21, at 8-9 (first alteration in original) (citations omitted).) In fact, Ham concedes as much in its Response to Defendants' instant Motion: "It is Everett's position that the letter reaffirmed the parties' original understanding of the agreement . . . ." (Docket No. 42, at 7.) Thus, in light of the evidence currently before it, the Court must affirm its original conclusion that "the straightforward implications of the letter and the Agreement are that the parties did not modify the Agreement as originally written." (Docket No. 21, at 9.) As such, Ham's argument that the April Letter constitutes an enforceable modification of the material terms of the Agreement is without merit.

## CONCLUSION

For these reasons, the Court finds no genuine issue of material fact and, therefore, will GRANT Defendants' Motion for Summary Judgment. An appropriate order shall issue separately.

Date:

cc:     Counsel